### DETERMINED IN THE

# SUPREME COURT

### OF

# WASHINGTON

[No. 15454. Department Two. February 3, 1920.]

MAGGIE GUARASCIO, *Respondent*, v. PRUDENTIAL
INSURANCE COMPANY OF AMERICA, *Appellant*.[1]

INSURANCE (34) — LIFE POLICY — VALIDITY — DELIVERY WHILE IN
GOOD HEALTH. The delivery of a policy of life insurance to insured's
father a few hours before insured's death while he was suffering
from a sudden attack of tubercular meningitis, is ineffectual, where
he was in apparent good health when the application was made,
and the policy provided it should not take effect until the same shall
be delivered while the insured's health was the same as described in
the application.

Appeal from a judgment of the superior court for
Spokane county, Carey, J., entered April 4, 1919, upon
the verdict of a jury rendered in favor of the plaintiff,
in an action on a life insurance policy. Reversed.

*S. A. Keenan,* for appellant.

BRIDGES, J.—Suit to recover on life insurance policy.
On January 30, 1918, J. S. F. Guarascio applied in
writing to the appellant for a $500 policy of life insur-
ance. Very shortly thereafter, the usual medical ex-
amination was made by the insurance company's reg-
ular physician at Spokane. The application and med-
ical examination were forwarded to the home office

[1]Reported in 187 Pac. 405.

of the appellant at Newark, N. J., on February 8, 1918; the policy was returned to appellant's agents at Spokane on February 18, 1918, and on the afternoon of that day was delivered to the father of the assured; within a few hours thereafter assured died. The application for the insurance shows that, at the time it was made, the assured was eighteen years of age and in good health. The application contained, among other things, the following:

"Said policy shall not take effect until the same shall be issued and delivered by the said company and the first premium paid in full, while my health, habits and occupation are the same as described in this application."

The respondent, being the mother of the assured, was named in the policy as the beneficiary. The case was tried to a jury, which brought in a verdict for the respondent. When the respondent rested her case, defendant moved for a nonsuit, which was denied. After the verdict was returned, defendant moved for a judgment notwithstanding the verdict, which motion was likewise denied. Appellant's motion for a new trial was refused. This appeal is taken from the judgment entered on the verdict.

The following are practically undisputed facts: At the time of the application for insurance, the assured appeared, and was believed to be, in reasonably good health. It is not improbable that at that time there was a latent tuberculosis, but if so, it was not recognized by the physicians, or any other person, as such. Within a few days, however, after making the application, the assured became sick and procured a physician, who, at first, thought the trouble was nothing more than sore throat, due to diseased tonsils. Several days before the delivery of the policy, the assured

went to a hospital in Spokane, where he remained until his death. The policy was delivered to his father for him during the afternoon of February 18, and the assured died about one o'clock of the following morning. The assured's condition became serious two or three days before his death. His physician testified at that time he had developed tubercular meningitis, that he was unconscious, and that there was no hope of his recovery. In other words, it is undisputed that, at the time of the application for the insurance, the boy's health was represented to be, and to all appearances was, good, but at the time of the delivery of the policy he was very sick, and, in fact, on his death-bed. There is some dispute as to whether the parents of the assured knew of his critical condition at any time before he actually died. In fact, they testified that they did not believe he was very sick and thought his ailment was only temporary and not serious. Appellant's agents had no knowledge of assured's sickness or that he was in a hospital, when they delivered the policy. There is also testimony to the effect that appellant's physician did not actually ask, and the assured did not answer, many of the material questions contained in the medical examination blank. But these questions and answers as contained in the application are signed by the assured.

This case is controlled by *Logan v. New York Life Ins. Co.*, 107 Wash. 253, 181 Pac. 906, decided since the trial of the instant case. In the *Logan* case, the application for insurance provided:

"That the insurance hereby applied for shall not take effect unless the first premium is paid and the policy is delivered to and received by me during my lifetime and good health, and that unless otherwise agreed in writing, the policy shall then relate back to and take effect as of the date of this application."

The testimony showed conclusively that, at the time the policy was delivered to the assured, he had a tumor of the brain, which caused his death some days after the delivery of the policy. In that case we said:

· "The parties to this contract agreed that it should not take effect unless the first premium was paid and the policy delivered to, and received by, the insured in his lifetime and good health. It is proven conclusively that, at the time the policy was delivered, the insured was not in good health. He died nine days afterwards from a disease which the evidence shows had existed for months, or probably years, before the delivery of the policy. It is true the applicant was unconscious of the fact that he was ailing from that disease; and for that reason, no doubt, he agreed that the policy should not take effect until it was delivered to him in his lifetime and good health."

and concluded that the contract for insurance was not completed and the policy never became effective. We further held that the condition that the policy should not take effect unless delivered during the lifetime and good health of the applicant, was not a representation or warranty within the meaning of §§ 6059-34 and 6059-184, Rem. Code, with reference to misrepresentations or warranties made in the negotiations for a policy of life insurance, but was a condition precedent. There is no material difference between the good health clause in this application and that in the *Logan* case.

It is conclusively shown that, at the time the policy here was delivered, the assured was not in as good health as he was at the time he made the application, or as described therein. On the contrary, it is conclusively shown that, when the policy was delivered, he was very sick of an ailment from which he died a few hours thereafter. Under the doctrine, therefore, of the *Logan* case, it must be held that, although the

policy was delivered, it never became effective. The court should have granted appellant's motion for judgment notwithstanding the verdict. The judgment is reversed, and the cause remanded with directions to the lower court to enter judgment dismissing the action.

FULLERTON, MOUNT, and TOLMAN, JJ., concur.